# In the United States Court of Federal Claims

No. 21-1715

Filed: December 10, 2021

| | |
|---|---|
| **QUINCY MAGEE,** | |
| *Plaintiff*, | |
| v. | |
| **THE UNITED STATES,** | |
| *Defendant*. | |

*Quincy Magee*, Philadelphia, PA, pro se.

*Borislav Kushnir*, Trial Attorney, Commercial Litigation Branch, Civil Division, *Deborah A. Bynum*, Assistant Director, *Martin F. Hockey*, Acting Director, and *Brian M. Boynton*, United States Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

Quincy Magee ("Mr. Magee"), proceeding pro se, seeks more than $10,000,000,000 as payment for military and civilian service, as well as compensation for fraud. (Compl. at 4–5, ECF No. 1; Cover Sheet at 1, ECF No. 1-2). His demands also include non-monetary relief, including receipt of a Presidential Management Fellowship Certification, an investigation and censure of government officials who committed fraud, and appointment as the Ambassador of the United States of "America to the United Kingdom of Great Britain and Northern Ireland." (Compl. at 4–5). Before the Court is the United States' Motion to Dismiss pursuant to Rules 12(b)(1) and (6) of the Rules of the Court of Federal Claims ("RCFC"). (Def.'s Mot., ECF No. 8). Because the Court finds that it lacks subject-matter jurisdiction to hear Mr. Magee's claims and that Mr. Magee failed to state a claim upon which relief can be granted, the United States' Motion to Dismiss (ECF No. 8) is **GRANTED**.

### I. Background

Mr. Magee's Complaint is succinct: two pages that chronicle a lengthy interaction with various government actors and agencies beginning with the National Security Agency in 2001 and involving deprivation of shelter, food, medical care, hygiene and safety by unidentified persons in 2018. (Compl. at 4–5). In the intervening years, Mr. Magee alleges the United States used his copyrighted work without permission, pressed him into involuntary military and civilian service, assaulted him, stole his personal property, and forced him into homelessness. (*Id.*).

In his more expansive attachments to the Complaint, Mr. Magee references numerous media accounts relating to threats and acts of violence, his top secret contributions to various

federal intelligence agencies, Congress, and the White House, confirmation of his application to the Supreme Court Fellows Program, a police report related to the loss of a laptop, and a multi-page biography detailing his career in financial planning, the entertainment industry (including receipt of a best British album for "Cold Play's *XY*",[1] consideration for a Grammy award for Madonna's *Confessions on the Dance Floor*, and Record of the Year for Beyonce's *B'Day*), his contributions to public service, foreign trade, and economics (including the 2016 Presidential Campaign, the Federal Reserve, and recognition by multiple Nobel laureates for his global economic theories), quantum mechanics, the American judicial system, and government financial oversight, including as a pioneer of blockchain technology, cryptocurrency, and data monetization. (Compl. Ex. at 1–15, ECF No. 1-1).[2] Details of this work and much more is best left to a reading of the exhibits. (*Id.*).

## II.   Discussion

Determining the Court's jurisdiction over a claim is a threshold inquiry. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). The Court of Federal Claims has jurisdiction to hear "claim[s] against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a); *see also United States v. Testan*, 424 U.S. 392, 399 (1976). Claims must be grounded in a substantive cause of action that can fairly be interpreted as mandating compensation by the Federal Government for any damages sustained by the plaintiff. *See United States v. Mitchell*, 463 U.S. 206, 217 (1983).

The burden of establishing subject-matter jurisdiction rests with the plaintiff, who must do so by a preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). However, when faced with a motion to dismiss for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1), the Court must assume that all undisputed facts alleged in the complaint are true and draw all reasonable inferences in the plaintiff's favor. *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Moreover, the Court may look to evidence outside of the pleadings to ascertain the propriety of its exercise of jurisdiction over a case. *Rocovich v.*

---

[1] Somewhat uncharacteristically, given Mr. Magee's alleged involvement in the production of the album, the Complaint incorrectly refers to, the British music band, Coldplay's hit 2005 album as "XY". The correct title of the album, "X&Y," refers to the "tension of opposites," and was chosen over "The Outstanding Pectorals of Guy Berryman." David Gordon, *Hot for Coldplay*, Newsweek, May 29, 2005, *available at* https://www.newsweek.com/hot-coldplay-119537 (last visited Dec. 9, 2021).

[2] Mr. Magee previously filed a claim with the Southern District of New York where he alleged breach of contract by the Walt Disney Company because it failed to compensate him and provide copyrights for his alleged contribution to "numerous Disney films, including Marvel and Star Wars films[.]" *Magee v. Walt Disney Co.*, No. 19-cv-10274, 2021 WL 4312028, at *1, 3 (S.D.N.Y. Sept. 22, 2021) (dismissing complaint with prejudice).

*United States*, 933 F.2d 991, 994 (Fed. Cir. 1991), *aff'd in relevant part*, *Martinez v. United States*, 281 F.3d 1376 (Fed. Cir. 2002).

Generally, a pro se plaintiff's pleadings are held to "less stringent standards" than those of lawyers. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Providing pro se litigants with the same opportunity at justice requires that the Court review pleadings prepared by them with less scrutiny and give them a more liberal construction than pleadings prepared by counsel. *Castro v. United States*, 540 U.S. 375, 381 (2003). However, the Court cannot extend this leniency to relieve plaintiffs of their jurisdictional burden. *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987). Here, the United States argues that Mr. Magee's claims must be dismissed pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction and RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. (Def.'s Mot.). Despite the leniency afforded pro se parties, the Court agrees.

First, the United States asserts the Court does not exercise jurisdiction over cases sounding in tort. (*Id.* at 2). By its express terms, the Tucker Act states that the Court does not have jurisdiction over claims "sounding in tort." 28 U.S.C. § 1491(a)(1); *see also Straw v. United States*, 4 F.4th 1358, 1361 (Fed. Cir. 2021). Mr. Magee seeks redress for a litany of tortious acts. (Compl. at 4 (claiming "terrorism, police brutality, gun violence, advanced interrogation, bomb threats, explosions, medical trauma, assault and battery," "domestic violence, and harassment," and theft)). Even if the facts he alleges are true, the relief for his injuries does not rest with this Court. *Sanchez v. United States*, No. 19-1729, 2020 WL 201727 (Fed. Cl. Jan. 13, 2020) (dismissing "intentional fraud, theft, battery, assault, financial losses, misrepresentation, false imprisonment, emotional infliction of mental distress, trespassing to land, trespassing to chattel and conversion and duress" claims pursuant to the Tucker Act's jurisdictional constraints). Therefore, Mr. Magee's claims based on tortious actions must be dismissed.

Second, the United States correctly asserts that the Court may not hear claims "regarding personnel actions covered by the Civil Service Reform Act." (Def.'s Mot at 3). Every plaintiff bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence. *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010). As an initial matter, Mr. Magee has not met that burden because he has offered no factual evidence of any kind that would substantiate his employment record with the United States in the civil service, let alone his allegations against the DOJ in relation to his service. Even if Mr. Magee had provided evidence of his employment relationship with DOJ, complaints by civil service employees regarding reprisal, retaliation, and similar prohibited personnel practices do not fall under this Court's jurisdiction.[3] *Price v.*

---

[3] For the first time, and in response to the Motion to Dismiss, Mr. Magee contends that his employment retaliation claims amount to violations of the Fourth and Fifth Amendments of the Constitution. (Resp. to Mot. at 2). Though it is generally improper for a party to raise new claims in an opposition to a motion to dismiss, the Court considers Mr. Magee's constitutional claims with the leniency given to pro se plaintiffs. *Driessen v. United States*, 116 Fed. Cl. 33, 44 n.10 (2014). Nonetheless, Mr. Magee fails to identify how his employment retaliation claim relates to either the Fourth or the Fifth Amendment. (Resp. to Mot. at 2). Further, it is well-established that

*Panetta*, 674 F.3d 1335, 1339 (Fed. Cir. 2012); *Rebish v. United States*, 120 Fed. Cl. 184, 188 (2015).

Finally, the United States contends that though the Court has jurisdiction over breach of contract claims, Mr. Magee failed to properly state a plausible claim for a breach of contract and thus, dismissal pursuant to RCFC 12(b)(6) is required. (Def.'s Mot at 3–5). That Rule states that the pleadings "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007)). Instead, the plaintiff must provide the Court with "factual content" that allows the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Mr. Magee disagrees and argues that he formed express and implied-in-fact contracts with various government agencies including the SEC and United States Patent and Trademark Office ("USPTO"). (Compl. at 4; Resp. to Mot. at 2). The Court interprets Mr. Magee's claims generously, and, therefore, presumes he is asking the Court to validate these contracts and grant him liquidated damages. Even when construed liberally, the Court finds these claims unavailing.

As an initial matter, the Court retains the independent power to dismiss a case if at any time it determines that the facts alleged are clearly baseless and factually frivolous. 28 U.S.C. § 1915(e)(2)(B)(i); *Jones v. United States*, 122 Fed. Cl. 543, 545 (2015), *appeal dismissed* (Fed. Cir. 16-1073, Jan. 5, 2016); *Mallard v. United States Dist. Court for Southern Dist.*, 490 U.S. 296, 307–8 (1989) ("there is little doubt" that courts have power to dismiss frivolous cases "even in the absence of . . . statutory provision."). Under the Tucker Act, subject-matter jurisdiction is satisfied where a plaintiff makes "a *non-frivolous* assertion of a contract with the government." *Perry v. United States*, 149 Fed. Cl. 1, 11 (Fed. Cl. 2020) (emphasis in original) (quoting *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011)), *aff'd*, 2021 WL 2935075, at *4 (Fed. Cir. July 13, 2021).

Here, the alleged claims are so improbable that when presented with no substantiation they can be accurately labeled as "fanciful," "fantastic[,] or delusional." *Neitzke v. Williams*, 490 U.S. 319, 325, 328 (1989) (finding claims that contain fanciful, fantastic, or delusional factual allegations are deemed frivolous); *see also Arroyo v. United States*, No. 21-2290, 2021 WL

---

neither the Fourth Amendment nor the Due Process Clause of the Fifth Amendment mandate the payment of money; therefore, neither provide sufficient basis for jurisdiction in the Court of Federal Claims. *See Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997) (dismissing Fourth Amendment claim for lack of jurisdiction because it fails to mandate the payment of money). Similarly, the Takings Clause of the Fifth Amendment, while money-mandating, can only provide jurisdiction (1) when raised in connection to a nonfrivolous claim and (2) when the plaintiff concedes the validity of the government action that forms the basis of the claim. *Moden v. United States*, 404 F.4d 1335 (2005) (Fifth Amendment Takings claims must be nonfrivolous); *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802–3 (Fed. Cir. 1993). Mr. Magee's blanket assertion that he "considers the claims he reported which occurred to be a violation of the . . . Fifth Amendment[]," (Resp. to Mot. at 2), fails on both accounts.

2769874, at *6, *appeal dismissed* (Fed. Cir. Nov. 9, 2021) (finding that dismissal on frivolousness ground is warranted when the claims are beyond the court's jurisdiction, the complaint sets forth wholly incredible allegations, and the pro se plaintiff demonstrated a pattern of filing numerous frivolous actions in federal courts). The Court therefore finds that dismissal of Mr. Magee's claims is warranted because of their entirely frivolous nature.[4]

Even if not frivolous, Mr. Magee's contractual allegations fail to state a claim upon which relief can be granted. RCFC 12(b)(6). To maintain a cause of action under the Tucker Act, a plaintiff must establish that a contractual relationship between the plaintiff and the government existed. *Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984) ("The government consents to be sued only by those with whom it has privity of contract."). To state a claim for breach of an express and/or implied-in-fact contract a plaintiff must plausibly allege: (1) mutuality of intent to contract; (2) consideration; (3) "lack of ambiguity in offer and acceptance;" and (4) that the "government representative whose conduct is relied upon [has] actual authority to bind the government in contract." *Lewis v. United States*, 70 F.3d 597, 600 (Fed. Cir. 1995) (citation omitted). Those elements are lacking here.

Mr. Magee's Complaint is bereft of evidence or exhibits establishing the existence of an express contract with the United States. *Tucker v. United States*, 142 Fed. Cl. 697, 715 (dismissing a claim for violation of an express contract when the plaintiff failed to allege facts sufficient to demonstrate the existence of express contract). Our Rules also dictate that in pleading a contract claim, a party must either "identify the substantive provisions of the contract . . . on which the party relies," or "[i]n lieu of a description," annex a copy of the contract to the complaint. RCFC 9(k). Likewise, Mr. Magee's varied implied-in-fact contract claims, allegedly formed when the United States paraphrased copyrighted material in public remarks and later conscripted him into military and civilian service are unavailing.[5] (Compl. at 4). Here again, Mr. Magee fails to plausibly allege the elements of a breach of contract. *Lewis*, 70 F.3d at 600.

---

[4] *See Magee v. United States*, 17-cv-5892, Doc. No. 4 (S.D.N.Y. Aug. 4, 2017) (finding Mr. Magee's baseless account of multiple unrelated incidents to "rise to the level of the irrational" and dismissing the case as frivolous); *Magee v. Walt Disney Co.*, No. 19-10274, 2019 WL 6047428 (S.D.N.Y. Oct. 13, 2020) (finding that Mr. Magee has a history of initiating "vexatious and duplicative lawsuits"); *Magee v. Walt Disney Co.*, No. 19-10274, 2021 WL 4805463 (S.D.N.Y Oct. 13, 2021) (reprimanding Mr. Magee's persistent pattern of filing "duplicative and frivolous fillings").

[5] Mr. Magee claimed "areas of service" include but are not limited to work with the Secretary of Defense; Trade, Budget, and Transition Advisor within the Executive Office of the President; Advisor to National Security Council; Foreign Policy and Sanctions Policy Advisor for the Treasury Department; Fiscal and Monetary Policy Specialist on Quantitative Easing, Post Financial Analysis for the Federal Reserve Bank; Regulatory Framework and Systems Risk Advisor for the SEC; contract work with the Defense Advanced Research Project Agency; Clerk and Judicial Advisor to the United States Supreme Court; Advisor to the Senate Committees on

First, while mutuality of intent to contract or a meeting of the minds may be inferred from the conduct of the parties, *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1326 (Fed. Cir. 1997), Mr. Magee fails to identify a government agency or representative who negotiated a contract with him. *See Sahagun-Pelayo*, No. 13-929, 014 WL 3643471, at *3 (Fed. Cl. 2014) (a plausible claim for an implied or express contract must identify government agent who negotiated or entered into the contract). Second, Mr. Magee fails to demonstrate any consideration which existed between himself and the government. *Lewis*, 70 F.3d at 600; *Estate of Bogley*, 514 F.2d 1027, 1033 (Ct. Cl. 1975) (Consideration is a "detriment incurred by the promisee, or a benefit received by the promisor at the request of the promisor."). Third, nothing within the Complaint suggests an offer and acceptance existed. Fourth, Mr. Magee failed to identify a government agent with requisite actual authority to bind the government. (Compl. at 4–5). The United States may only be bound in contract by someone with actual authority to do so; apparent authority is insufficient. *Abraham v. United States*, 81 Fed. Cl. 178, 184 (citing *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989)). Based on the record, the Court cannot identify a government representative or agent with actual authority who created a binding contract with Mr. Magee. *See Henke*, 60 F.3d at 797. For each of these reasons, Mr. Magee's contractual claims fail.

The Court also notes that many documents Mr. Magee submitted, while illuminating, are not helpful. Regarding his fellowship at the United States Supreme Court, Magee submits a copy of an acknowledgement that confirms receipt of his application. (Compl. Ex. 1 at 7). That letter does not indicate that the Supreme Court intended to enter into a contract. *See YRC, Inc. v. United States*, 104 Fed. Cl. 360, 367 (2010) (citing *Heydt v. United States*, 38 Fed. Cl. 286, 302 (1997)) (holding that "knowledge alone is not sufficient to establish a mutual intent to contract."). Likewise, in his Response to the United States' Motion to Dismiss, Mr. Magee further claims he "is due monetary compensation" because he signed a confidentiality agreement with the SEC. (Resp. to Mot. at 2). To support this contention, Mr. Magee provides an unsigned letter from the SEC regarding "Covered Action 2018-152" which requests his signature for a confidentiality agreement. (*Id*. at 4–8). This also does not establish a contract. When the parties contemplate "being bound only by a written agreement, the court will not infer a contract without such an agreement." *Compliance Solutions Occupational Trainers, Inc. v. United States*, 118 Fed. Cl. 402, 406 (2014) (finding no mutual intent to contract when "no authorized official of the United States ever signed the cooperative agreement."). Conversely, the only signed document Mr. Magee provided was a signed letter responding to Mr. Magee's request for an update from the SEC. ((Resp. to Mot. at 9–10). This letter does not purport to be a contract; it is a mere status update. (*Id*.). In addition, even if the confidentiality agreement was deemed to be a duly executed contract, Mr. Magee provides nothing establishing a breach. (*See generally* Resp. to Mot.).

The remaining contract claim relates to Mr. Magee's alleged interaction with the USPTO. In his Response to the United States' Motion to Dismiss, Mr. Magee asserts he filed a patent

---

Commerce, Agriculture, Intelligence, Appropriations, Armed Services, Budget, Energy, Foreign Relations, Homeland Security, and Banking; and Advisor to the United States Secret Service in Florida, Boston, and Washington, D.C. (*See generally* Complaint, ECF No. 1).

with USPTO, but his patented specifications were "licensed by the Defense Advanced Research Project, and other government agencies." (*Id.*). However, "[a]n application for a patent is not negotiating a contract with the federal government." *Christy, Inc. v. United States*, 141 Fed. Cl. 641, 663 (2019); *see also Constant v. United States*, 929 F.2d 654, 657 (Fed. Cir. 1991) (determining patent grant contract claim was untenable as a matter of law). A patent application does not constitute a valid contract with the government. *Perry*, 149 Fed. Cl. at 17. Accordingly, the USPTO did not contract with Mr. Magee.

Lastly, Mr. Magee seeks wide ranging relief that is outside the Court's authority. In his Complaint, Mr. Magee requests that the Court grant a Presidential Management Fellowship Certification. (Compl. at 5). This certification is under the discretionary control of the Executive branch, specifically the U.S. Office of Personnel Management. *See Presidential Management Fellows Program*, https://www.pmf.gov/become-a-pmf/overview/ (last visited Dec. 2, 2021). Further, Mr. Magee requests the Court mount an investigation, issue a fine, and censure unnamed government agents who allegedly committed fraud against him. (Compl. at 5). However, the Court does not have jurisdiction over fraud claims against government officials. *See Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997). Finally, Mr. Magee requests that the Court appoint him as Ambassador to the United Kingdom. (Compl. at 5). That authority is solely vested in the President of the United States with the advice and consent of the Senate. *See* U.S. Const. art. II, § 2. Accordingly, the Court does not have the authority to grant these remedies.

Mr. Magee also filed a Motion for Certificate of Default, (Pl.'s Cert. of Default, ECF No. 10), alleging the United States failed to respond to his Complaint by the Court designated deadline on October 15, 2021. However, the United States filed a Motion to Dismiss under RCFC 12(b) on October 14, 2021. *See* RCFC 12(a)(4). Accordingly, Mr. Magee's Motion is denied. Further, Mr. Magee's latest submissions to this Court have been defective.[6] The Court notes that given Mr. Magee's history of filing frivolous lawsuits, it is not inclined to review any additional filings from Mr. Magee that are not in compliance with this Court's rules.

### III.   Conclusion

For the stated reasons, Mr. Magee's Motion for Certificate of Default (ECF No. 10) is **DENIED**. The United States' Motion to Dismiss (ECF No. 8) is **GRANTED**, and this matter is **DISMISSED** for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1) and failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6). The Clerk is **DIRECTED** to enter judgment accordingly and to **REJECT** any of Plaintiff's filings in this matter that are not in compliance with the Court's rules.

**IT IS SO ORDERED.**

*David A. Tapp*
DAVID A. TAPP, Judge

---

[6] The clerk's office has marked the letters and memos received from Mr. Magee as defective because no provision in the Court's rules allowed for such filings.